

The Honorable Mary Alice Theiler

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. MJ16-202 |
| Plaintiff, | |
| | COMPLAINT FOR VIOLATION |
| v. | |
| AUBREY TAYLOR, a/k/a "Uno", | Title 18, United States Code, Section 1591 |
| Defendant. | |

BEFORE The Honorable Mary Alice Theiler, 700 Stewart Street, Seattle, Washington.

## COUNT ONE

### (Sex Trafficking of a Juvenile)

Beginning at a time unknown, but on or about October 22, 2014, and continuing through on or about October 30, 2014, in King County, within the Western District of Washington, and elsewhere, AUBREY TAYLOR did, in and affecting interstate commerce, knowingly recruit, entice, harbor, transport, provide and obtain by any means, a juvenile female, H.S., who had not attained the age of eighteen years, knowing that H.S. would be caused to engage in commercial sex acts.

All in violation of Title 18, United States Code, Sections 1591(a)(1) and 1591(b)(2).

UNITED STATES v. TAYLOR/COMPLAINT - 1

The undersigned complainant being duly sworn states:

1.	I, Lovisa Dvorak, am a commissioned police officer for the City of Kent Police Department and have been so employed since August 16, 2007. I am currently assigned as a Detective in the Kent Police Department's Special Investigations Unit (SIU), and as a Task Force Officer for the FBI's Child Exploitation Task Force (CETF). In the course of my law enforcement career, I have successfully completed the curriculum set forth by the Washington State Criminal Justice Training Commission. During my time in the Basic Law Enforcement Academy, I completed approximately 720 hours of training in the areas of Criminal Procedure, Criminal Law, Criminal Investigations and other law enforcement related fields. In addition, I have attended over 100 hours of training specifically related to sex trafficking to include a course on conducting interviews of juvenile sex trafficking victims. I have also completed a 40 hour undercover techniques and survival course for women, an 80 hour undercover school, and a 24 hour informant development course. I have been involved in dozens of prostitution and sex trafficking related investigations. Throughout these investigations, I have had numerous contacts with victims of sex trafficking, patrons of prostitutes (also known as "johns"), and promoters of prostitution (also known as "pimps" or "traffickers").

2.	My awareness of domestic minor sex trafficking, as well as my knowledge of the proceeds and evidence related to forced prostitution as set forth in this Affidavit derives from my training, my involvement in prior sex trafficking investigations, and other intelligence information provided through law enforcement agencies.

3.	The information contained in this Affidavit is based upon my own knowledge, as well as upon court documents, police reports, investigations conducted by others, and the details related to me by others familiar with this matter. This Affidavit does not purport to state every fact known to law enforcement, but rather only to satisfy probable cause in relation to the charge above.

UNITED STATES v. TAYLOR/COMPLAINT - 2

4.    On or about October 19, 2014, a seventeen-year-old female, hereinafter referred to as H.S., was reported as a missing juvenile to the Bellingham Police Department. During the subsequent police investigation, investigators learned that H.S. had sent text messages to her sister indicating that she was being held against her will. H.S.'s family provided screenshots of text messages to the Bellingham Police Department, including a text from H.S. in which she stated "Someone will find me hopefully. Raped, beaten. And working my job." Law enforcement officers learned that the Internet Protocol (IP) address used to send the messages resolved to the LaQuinta Inn in Wenatchee, Washington.

5.    On October 30, 2014, Wenatchee Police Department officers located H.S. at the LaQuinta Inn in Wenatchee. H.S. was in the company of an adult female, identified as A.M. At the time, the motel clerk told investigators that H.S. had been seen the previous day with a black male. Law enforcement officers learned that A.M. had been contacted a week earlier at another Wenatchee area motel after the hotel clerk reported suspicious activity and a high number of visitors to a hotel room rented to Defendant AUBREY TAYLOR.

6.    Law enforcement officers interviewed H.S. She advised that earlier that month, she had been in Seattle when she was approached by a black male who identified himself as "La'Sear" and "C-Note. " H.S. described "C-Note" as a twenty-five- black male who drove an old white police car with blue rims. "C-Note" and H.S. spent the night together at a motel in Kent, Washington. The following day, "C-Note" told H.S. that he was ready for her to make money for him. When H.S. asked how, he told her he was going to send her with his brother to make money. H.S. was later shown a photo montage and positively identified CARL TAYLOR as the subject she knew as "C-Note."

7.    H.S. said that CARL TAYLOR then introduced her to his brother, whom he called "Uno," and Uno's girlfriend. H.S. described "Uno" as a twenty-eight year old black male and believed his true name to be AUBREY TAYLOR. She described "Uno's" girlfriend as a twenty-three year heavy set white female, with blonde hair, who

UNITED STATES v. TAYLOR/COMPLAINT - 3

uses the fictitious name "Sydney" in her online escort advertisements. H.S. was later shown photo montages and identified AUBREY TAYLOR as the subject she knew as "Uno," and A.M. as "Uno's" girlfriend.

8.    H.S. stated that after CARL TAYLOR introduced her to AUBREY TAYLOR and A.M., he instructed H.S. to get in the car with them.    AUBREY TAYLOR and A.M. drove H.S. to Wenatchee, stopping to purchase a forty-pack of condoms before renting a hotel room. A.M. created prostitution advertisements for H.S. on the website Backpage.com and asked her what she wanted her "name" to be. By way of background, the website Backpage.com is an Internet-based website featuring classified advertising. Backpage.com's adult entertainment section contains advertising for prostitution-related services. The website contains listings that are explicitly for sex.

9.    H.S. was not familiar with the website Backpage.com and still did not understand how she was going to make money, but chose the name "Lydia." A.M. used fake photographs from the Internet to create a prostitution advertisement for H.S. using the name "Lydia." Accordingly to H.S., once A.M.'s advertisement was posted to the Backpage.com website, AUBREY TAYLOR and A.M. began receiving calls and text messages on their cellular telephones.    A.M. soon informed H.S. that she had a "date." H.S. was confused because she did not know anyone in the area. Both AUBREY TAYLOR and A.M. told H.S. that she was going to earn money by going on "dates" and people would pay her to have sex. A.M. further explained to H.S. that working as a prostitute would show CARL TAYLOR she loved him. AUBREY TAYLOR and A.M. instructed H.S. on what to do with the customers, how much money to charge them, and the rules she had to follow, including always wearing a condom.    After the prostitution "date," H.S. was required to immediately give her earnings to AUBREY TAYLOR or A.M. According to H.S., A.M. communicated with the potential customers and told H.S. when a customer would be arriving at the motel room.

10.    H.S. estimated performing sex acts in exchange for money with between fifteen and twenty male clients. H.S. told investigators there were many "back-to-back"

UNITED STATES v. TAYLOR/COMPLAINT - 4

dates in which there was no break between customers. H.S. told the investigators she often went two days without sleep, and did not eat for an entire day on several occasions due to the volume of customers. H.S. did not get to keep any of the money she earned from commercial sex acts but was required to give all of her earnings to AUBREY TAYLOR or A.M. During this time, A.M. also engaged in prostitution, using the name "Sydney," on her Backpage.com advertisements. According to H.S., AUBREY TAYLOR did not allow A.M. to keep any of her commercial sex earnings because he was A.M.'s pimp.

11.    While driving to the hotel where H.S. would later perform her first commercial sex act, AUBREY TAYLOR forced H.S. to perform oral sex on him. H.S. repeatedly told AUBREY TAYLOR she did not want to do this, at which point AUBREY TAYLOR yelled at H.S. until she complied.

12.    H.S. reported an incident in which AUBREY TAYLOR was contacted by law enforcement at a hotel. AUBREY TAYLOR was asked about the traffic to and from his motel room, drugs, and the female he was with. H.S. said that after this incident, she, AUBREY TAYLOR, and A.M. traveled to Tri-Cities area before returning to Seattle. I am aware from reviewing law enforcement reports that on October 23, 2014, law enforcement officers responded to the Best Western in Wenatchee after an employee reported suspected drug activity in AUBREY TAYLOR'S room. Both AUBREY TAYLOR and A.M. were contacted by officers during this incident.

13.    H.S. said that upon returning from SEATTLE, AUBREY TAYLOR and A.M. dropped H.S. off with CARL TAYLOR. H.S. stayed with CARL TAYLOR at the Kent motel. The following day, H.S. returned to Wenatchee with A.M. to continue earning money through prostitution. AUBREY TAYLOR stayed at a motel in Kent, Washington, and later met up with A.M. and H.S. in Wenatchee.

14.    Based upon the information provided by H.S., law enforcement officers located prostitution advertisements on Backpage.com that had been posted in October 2014 for someone named "Lydia." The advertisements featured photographs consistent

UNITED STATES v. TAYLOR/COMPLAINT - 5

with the descriptions provided by H.S.  The first advertisement was posted in Backpage.com's adult services section for Wenatchee, Washington, on October 22, 2014 at 12:33 a.m.  Advertisements were then posted on Backpage.com for the Tri-Cities area, and then for Seattle, before being posted for Wenatchee.  The final advertisement was posted for Wenatchee on October 30, 2014, the same day H.S. was located by law enforcement in Wenatchee.  Law enforcement officers also located advertisements featuring a photograph of A.M. under the name "Sydney."  These ads were consistent with the "Lydia" advertisements and the travels described by H.S.  Advertisements featuring a photograph of A.M were posted on Backpage.com's adult services section for Wenatchee on October 21 and 22, 2014.  The next advertisement was posted for the Tri-Cities area on October 23, after the above-mentioned law enforcement contact in Wenatchee.  Advertisements for A.M. were then posted for Backpage.com's Seattle board on October 25 and 26 and then on the Wenatchee board from October 27 through October 30.  Following H.S.'s recovery on October 30, the next advertisement for A.M. was posted on November 1, 2014, in Backpage.com's adult services section for the Tri-Cities.

15.     In October 2015, law enforcement officers participating in a multi-agency operation located a prostitution advertisement on Backpage.com for someone who identified herself as "Syd."  Undercover officers called the number listed on the advertisement and made contact with "Syd."  "Syd" agreed to meet at a local hotel in Issaquah, Washington.   A.M. came to the hotel in response to the undercover officer's call and was arrested after making an offer and agreement with the undercover officer to perform sex in exchange for cash.

16.     I interviewed A.M.  Using law enforcement database information, I learned about the October 2014 incident in Wenatchee involving A.M., AUBREY TAYLOR, and H.S.  In response to my questions, A.M. stated that she and AUBREY TAYLOR have been together "on and off" since 2011.  A.M. said that she and TAYLOR are no longer

UNITED STATES v. TAYLOR/COMPLAINT - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

together but continue to communicate by telephone. When asked about H.S., A.M. referred to H.S. as a "bitch" and said that H.S. had lied to her [A.M.] about her age.

17.     A.M. consented to a download search of her cellular telephone. A review of A.M.'s cell phone download revealed that H.S. was listed in A.M.'s contacts by first and last name. The cell phone number listed on H.S.'s Backpage.com advertisements was listed in the contacts under the name "Tashiana." Law enforcement had received information that a woman with the first name Tashiana was the mother of AUBREY'S TAYLOR'S child. A search of the cell phone also revealed numerous contacts referencing the name "Lydia," along with dollar amounts and descriptions or details of suspected customers. The contacts also used "Wen," which is a potential abbreviation for Wenatchee. Several examples of these contacts are as follows: "$400 Lydia Wen 2 Whole Hrs," "$100 Lydia Wen Come Back 4 More," "$80 Lydia Wen Mexi Behind Car," and "$500 Lydia Wen Australia." I am aware, based upon my training and experience, that these types of notations and contact information are consistent with the way that prostitutes and pimps keep track of commercial sex customers, their phone numbers, and other information, to include race, sexual acts or fetishes, dollar amounts, location and employment. Other contacts had similar titles for "Syd," which is an abbreviation for Sydney.

18.     A.M.'s cellular telephone had three contacts for AUBREY TAYLOR. These contacts included his cellular telephone number, previous addresses, email addresses, and family member names. The number 206-XXX-5083 is listed in A.M.'s cellular telephone contacts under the name "Aubrey Veechee Taylor."

19.     I reviewed text messages on A.M.'s cellular telephone occurring between October 22, 2014, through October 9, 2015. In the text messages, A.M. makes statements indicating that she was present in Wenatchee on October 28, 2014.

20.     I also reviewed text messages between A.M. and numbers associated with AUBREY TAYLOR. The texts provide details of their prostitution-related activities, including posting advertisements online, prices for specific sex acts, motel and travel

UNITED STATES v. TAYLOR/COMPLAINT - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

information, identification of other women who were working as prostitutes for AUBREY TAYLOR, and AUBREY TAYLOR's collection of prostitution proceeds. In the text exchanges, AUBREY TAYLOR provides instructions to A.M. on posting advertisements (for herself and others), assists in managing other prostitutes, travel destinations in Washington and Idaho, and transportation to "dates."

21.    Throughout the series of text messages between A.M. and AUBREY TAYLOR, AUBREY TAYLOR repeatedly refers to himself as a "pimp" and discusses his "recipe" of pimping. He refers to A.M. as a "bottom." Based upon my training and experience, I am aware that pimps often use an experienced or primary prostitute, often referred to as a "bottom," who is responsible for training, managing, and monitoring the pimp's other prostitutes. In the text messages between AUBREY TAYLOR and A.M., AUBREY TAYLOR complains that A.M. is not doing her "bottom" job properly. He accuses A.M. of running off "bitches," leading to a loss of income. In a set of text messages from December 2014, AUBREY TAYLOR instructs A.M. to take a group of girls to Wenatchee and states that he will take another group to Yakima. AUBREY TAYLOR and A.M. have text messages which discuss A.M. posting advertisements for the other females. Later, AUBREY TAYLOR inquires of A.M. how much money she made in Wenatchee and A.M. provides an earnings report. AUBREY TAYLOR further instructs A.M. to collect money from other girls who are "working" (prostituting).

22.    In a November 30, 2014 text exchange between A.M. and AUBREY TAYLOR, A.M. wrote "I took that underage bitch out of town so you and tashiana had a room to stay at and spend time together and I didn't care I didn't say anything I was my idea that way money could still be made." This message is consistent with H.S.'s statement of going to Wenatchee with A.M. while AUBREY remained at a motel in Kent.

//

//

UNITED STATES v. TAYLOR/COMPLAINT - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

23.    Based on the foregoing, I submit that there is probable cause to believe that AUBREY TAYLOR committed the crimes of Sex Trafficking of a Child, as charged in Count One above, in violation of Title 18, United States Code, Sections 1591(a)(1) and (b)(2).

LOVISA DVORAK
Task Force Officer
Federal Bureau of Investigation

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant( committed the offenses set forth in the Complaint.

Dated this ____4____ day of May, 2016.

MARY ALICE THEILER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES v. TAYLOR/COMPLAINT - 9